FILED
2026 Sep-17 AM 10:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **LINDA LOOMIS,**<br>Plaintiff,<br><br>**v.**<br><br>**FRANK BISIGNANO, Commissioner of the Social Security Administration,**<br>Defendant. | **Case No. 5:25-cv-626-CLM** |

# MEMORANDUM OPINION

Linda Loomis seeks disability and disability insurance benefits ("DIB") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Loomis's application for benefits in an opinion written by an Administrative Law Judge ("ALJ").

Loomis argues that the ALJ erred because substantial evidence does not support the ALJ's evaluation of Loomis's subjective pain testimony and finding that Loomis has the residual functional capacity to perform a range of light work. Because the ALJ erred in finding that Loomis did not seek or receive any treatment for her physical problems until April 26, 2021, the court agrees. So the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner.

## I. STATEMENT OF THE CASE

### A. Loomis's disability, as told to the ALJ

Loomis was 62 on her alleged disability onset date and date last insured. (R. 57, 188). Loomis has a high school education and past relevant work as a customer service representative. (R. 209–10).

According to Loomis, she cannot work because she suffers from arthritis in her feet, knees, hips, shoulders, and fingers; asthma; sleep apnea; memory issues; fatigue; chronic cough; kidney stones; high cholesterol; high blood pressure; anxiety; depression; and neuropathy in her feet. (R. 208). At the ALJ hearing, Loomis testified that she quit her last job because she was required to stand on her feet, which made her legs hurt. (R. 51). Loomis also said that the main things preventing her from working were her neuropathy and anxiety when put under a lot of pressure. (R. 51–52). Loomis mainly feels pain in her feet and left knee and was told that she cannot get knee replacement surgery until she loses weight. (R. 52–53).

Loomis then explained that she cannot stand or walk for more than 15 minutes before needing to sit down. (R. 53). And Loomis likes to stay in a recliner at home to prevent her feet from hurting. (*Id.*). Loomis also asserts that she cannot lift and carry more than 5 pounds. (R. 53–54).

Loomis lives with her husband. (R. 49–50). And she is able to do light household chores like putting dishes in the dishwasher. (R. 54–55). But Loomis only drives short distances. (R. 55). Loomis also says that her medications cause her drowsiness and frequent urination. (R. 56).

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied.<br>If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied.<br>If yes, proceed to Step 3. |

| | | |
|---|---|---|
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| **Determine Residual Functional Capacity** | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Loomis's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Loomis applied for DIB and a period of disability in April 2022. After receiving an initial denial in September 2022, Loomis requested an ALJ hearing, which was held in January 2024. The ALJ ultimately issued an opinion denying Loomis's claims in March 2024. (R. 10–21).

At Step 1, the ALJ determined that Loomis was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined Loomis suffered from the following severe impairments: hypertension, asthma, obstructive sleep apnea, bilateral knee osteoarthritis, neuropathy, and morbid obesity.

At Step 3, the ALJ found that none of Loomis's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Loomis's residual functional capacity.

The ALJ determined that Loomis had the residual functional capacity to perform a range of light work with these added limitations:

- Loomis could sit for a total of six hours in an eight-hour workday with customary breaks.
- Loomis could stand and walk for a total of six hours in an eight-hour workday with customary breaks.
- Loomis could occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps.
- Loomis could not climb ladders, ropes, or scaffolds.
- Loomis could occasionally push and pull with her bilateral lower extremities.
- Loomis could occasionally be exposed to extreme cold, heat, wetness, fumes, odors, dusts, and poor ventilation.
- Loomis could not be exposed to hazardous machinery and unprotected heights.

At Step 4, the ALJ found that Loomis could perform her past relevant work as a customer services representative. Thus, the ALJ did not proceed to Step 5 of the five-step process.

Loomis requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. LEGAL ANALYSIS

Loomis argues that substantial evidence does not support the ALJ's evaluation of Loomis's subjective pain testimony and finding that Loomis can perform a reduced range of light work. The SSA's regulations define light work as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Even so, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with pushing and pulling of arm or leg controls." *Id.*

An ALJ must apply the "two-step" pain standard to subjective testimony regarding pain and other symptoms. Under this standard, the claimant must first present "evidence of an underlying medical condition." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If she does, the claimant must then either: (a) present "objective medical evidence confirming the severity of the alleged pain," or (b) show "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *See id.* This court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

At the ALJ hearing, Loomis testified that she quit her last job because she was required to stand on her feet, which made her legs hurt. (R. 51). Loomis also testified that her neuropathy was the main physical condition that prevented her from working. (R. 51–52). Loomis then explained that her neuropathy caused pain in her feet and left knee. (R. 52). Plus, Loomis asserted that she could stand and walk for only around 15 minutes at a time and lift and carry no more than five pounds. (R. 53–54). Finally, when Loomis is at home, she sits in a recliner with her feet propped up so they won't hurt. (R. 53).

The ALJ found that Loomis's medically determinable impairments could reasonably be expected to cause these alleged symptoms. (R. 17). But the ALJ determined that Loomis's statements about the intensity, persistence, and limiting effects of her symptoms weren't entirely consistent with the record evidence. (*Id.*). Thus, despite Loomis's impairments, the ALJ found that she could perform a reduced range of light work at a sustained rate.

The first thing the ALJ noted in discounting Loomis's subjective pain testimony was that Loomis "did not seek or receive any treatment for her physical problems until a few days after her amended alleged onset date on April 26, 2021 . . . ." (*Id.*). But the record refutes this finding. As Loomis points out, her treatment records show that she sought treatment for foot pain in August 2019 and reported that walking, climbing stairs,

and stooping aggravate her pain. (R. 309). Around a year later, Loomis returned to the orthopedist complaining that she continued to suffer from pain in her right foot. (R. 311). And physical examination showed increased tenderness along the calcaneal insertion of Loomis's right Achilles tendon. (R. 312).

In November 2020, Loomis reported that "[h]er left foot feels better now but her right heel has flared up and is very painful again. She continues to do stretches and got new tennis shoes. It's very painful to drive and sometimes her foot goes numb." (R. 315). And physical examination again showed increased tenderness around Loomis's right Achilles tendon. (R. 316). So Loomis was ordered to continue with her heel stretches and started on meloxicam to help treat her pain. (R. 316). The next month, Loomis was again seen for knee and foot pain. (R. 317). And during that visit, Loomis rated her pain level as a 7/10 on the pain scale. (R. 318).

In March 2021, Loomis again reported bilateral foot pain, including pain in the back of her right heel/ankle and the top of her left foot. (R. 319). And examination of Loomis's feet revealed increased tension on her right Achilles tendon and increased tenderness in her left foot. (R. 320). Thus, Loomis received an injection in her left foot and was told to follow up as needed. (*Id.*). Because Loomis repeatedly sought treatment for her foot pain between August 2019 and March 2021, the ALJ erred to the extent that the ALJ found that April 26, 2021, was the first time Loomis sought or received treatment for her physical problems. (R. 17).[1]

[1] Giving the ALJ the benefit of the doubt, the ALJ may have intended to say that April 26, 2021, was the first time Loomis sought treatment after her April 22, 2021, amended disability onset date, which appears to be accurate. But that is not what the ALJ said, so it is unclear whether and to what extent the ALJ discounted Loomis's testimony based on a misimpression about when Loomis first sought treatment. *See Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010) (finding error when ALJ's subjective pain testimony analysis was "unclear" and "appear[ed] to reflect a misunderstanding of the nature of [the claimant's] condition").

And the court cannot say that the ALJ's error was harmless. "The Eleventh Circuit has consistently held that mistakes as to weight and credibility constitutes a prejudicial error on the part of the ALJ." *Robinson v. Astrue*, 2012 WL 4344547, at *8 (N.D. Ala. Sept. 13, 2012). And here, the main symptom that Loomis complained about during the ALJ hearing was the pain in her feet and legs. (R. 51–54). Loomis also alleged in her disability report that part of the reason she cannot work is arthritis and neuropathy in her feet. (R. 208). So that the ALJ may have misunderstood that Loomis had been seeking and receiving treatment for this pain for over a year before her alleged disability onset date could have affected the ALJ's evaluation of Loomis's subjective pain testimony and residual functional capacity. "In this context, [the court] cannot hold this error harmless" even though Loomis's treatment notes and reported daily activities may support the ALJ's ultimate conclusion that Loomis is not disabled. *See Talbot v. Comm'r of Soc. Sec.*, 383 F. App'x 843, 845 & n.1 (11th Cir. 2010); *see also Robinson*, 2012 WL 4344547, at *9 ("Even though it is true that the ALJ's other reasons for discrediting Plaintiff's pain testimony are supported by substantial evidence, it is emphatically not the purview of this court to assume that factual errors by the ALJ would *not* result in a different outcome.").

The court will thus remand this case to the Commissioner for the ALJ to reconsider Loomis's subjective pain testimony in light of the fact that Loomis sought and received treatment for her foot pain between August 2019 and March 2021. In remanding this case for reconsideration, the court is not holding that the ALJ must find Loomis's subjective pain testimony credible or that Loomis does not have the residual functional capacity to perform a reduced range of light work. Rather, the court is merely requiring the ALJ to reassess Loomis's testimony with the knowledge that Loomis received treatment for her physical problems before April 26, 2021.

## IV. CONCLUSION

For these reasons, the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner for the ALJ to reassess Loomis's subjective pain testimony. The court will enter a separate final order that closes this case.

**Done** on September 17, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE